**IN THE COURT OF APPEALS OF IOWA**

No. 19-1796
Filed December 18, 2019

**IN THE INTEREST OF H.B. and Z.R.,**
**Minor Children,**

**T.R., Mother,**
　　Appellant.
_____

　　Appeal from the Iowa District Court for Muscatine County, Gary P. Strausser, District Associate Judge.


　　A mother appeals the termination of her parental rights to two children. **AFFIRMED.**


　　Sara Strain Linder of Bray and Klockau, Iowa City, for appellant mother.

　　Thomas J. Miller, Attorney General, and Ellen Ramsey-Kacena, Assistant Attorney General, for appellee State.

　　Christopher Foster of Foster Law Office, Iowa City, attorney and guardian ad litem for minor children.


　　Considered by Doyle, P.J., and Tabor and Schumacher, JJ.

**TABOR, Judge.**

A mother, Tamika, appeals the juvenile court order terminating her parental rights to two children, five-year-old H.B. and two-year-old Z.R. She raises four issues. First, she contends the court should have granted a continuance to give her attorney more time to prepare. Second, she alleges the State did not offer clear and convincing evidence supporting the statutory grounds for termination. Third, she contends termination will be detrimental to H.B. and Z.R. because of the strong parent-child bond. And fourth, she asks for more time to reunify. Looking independently at the entire record, we find no basis for reversal.[1]

**I.      Facts and Prior Proceedings**

A mid-summer drug raid at Tamika's home in 2018 resulted in the emergency removal of H.B. and Z.R. Authorities found she and her husband, Matthew, were under the influence of methamphetamine while caring for the children.[2] In the wake of this raid, Tamika pleaded guilty to child endangerment and possession of methamphetamine; she received a deferred judgment.

That summer, Tamika obtained a substance-abuse evaluation that assessed her with amphetamine dependence. She failed to complete the recommended substance-abuse treatment and missed more than twenty of the randomly requested drug tests.

---

[1] We review this appeal de novo, which means we examine both the facts and law and adjudicate anew those issues properly preserved and presented. *See In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995). The factual findings of the juvenile court do not bind our decision, but we give them weight. *In re M.W.*, 876 N.W.2d 212, 219 (Iowa 2016). The State's proof must be clear and convincing, which means we see no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010).

[2] This event marked the second time the Iowa Department of Human Services (DHS) took custody of H.B. because of Tamika's substance abuse; his first removal was in 2015.

At the end of August, the court adjudicated H.B. and Z.R. as children in need of assistance (CINA). Showing no progress in addressing her addiction, Tamika never regained custody of the children. During his time in foster care, H.B. demonstrated "fairly significant behavioral and learning issues," according to the report of the guardian ad litem. His younger sister, Z.R., adapted well to foster care, developing a strong attachment to her foster mother. The DHS tried to obtain an area education agency evaluation for Z.R. but could not do so because of Tamika's lack of cooperation.

Between August and November 2018, Tamika attended only half of the thirty-two visitations offered with her children. Her visitation with H.B. caused him emotional harm. The DHS reported his behavior would decline after each interaction "and even more so when his mother did not show up for the interactions." To DHS, "[i]t became clear that Tamika's sporadic attendance was causing her child distress." H.B. expressed fear of his mother and frequently revisited the trauma of the police raid on their home.

At the recommendation of his therapist, the juvenile court suspended H.B.'s visitation with his mother. The court made clear Tamika could resume interactions with H.B. if she obtained a psychological evaluation and a substance-abuse evaluation and followed up on their respective recommendations. But she did not do so. Tamika's visitations with Z.R. continued.

Tamika resisted other services recommended by the DHS and missed five appointments scheduled with the caseworker in November and December 2019. When Tamika finally attended a family team meeting in early January 2019, she was uncooperative and swore at the caseworker. The DHS continued to reach out

to Tamika through February and March 2019, but she remained unreceptive to complying with the case plan.

The State filed a petition to terminate parental rights on March 11, 2019. At the April 25 hearing, Tamika testified she was "clean and sober" and had no mental health issues. In its order terminating her parental rights, the juvenile court found those claims incredible. Tamika now appeals.[3]

## II.    Analysis

### A.    Motion to Continue

Tamika argues the juvenile court should have continued the April 25 termination hearing because her attorney, Sara Linder, did not have time to prepare against the allegations in the State's petition. Linder represented Tamika in the CINA case. *See* Iowa Code § 232.89(1) (2019) (authorizing appointment of counsel in CINA cases). But the court did not enter the order of appointment in the termination case until 2:19 p.m. on April 24—less than twenty-four hours before the start of the hearing. *See* Iowa Code § 232.116(1) (authorizing appointment of counsel in termination cases).

At the start of the termination hearing, Linder sought a continuance, arguing she needed more time "to properly prepare and present the appropriate defense" for her client. Linder acknowledged attending a pretrial conference on April 4, where the parties talked about a "conditional appointment order, which was not entered." Counsel noted she "was not able to even see the grounds in the petition

---

[3] The court also terminated the parental rights of H.B.'s father, Phillip, and Z.R.'s legal father, Matthew. Neither of them appeals.

until yesterday." She further noted the State offered some exhibits that were not included in the underlying CINA file.

The juvenile court agreed the timing placed attorney Linder "in a difficult position." But the court denied the continuance, finding Tamika at fault for the delay in seeking court-appointed counsel. "[Linder] would have had more time to review the petition more thoroughly with her client, as well as those exhibits, if her client had timely applied for an attorney." The court explained that the State filed a summons on March 12, notifying Tamika of the April 25 hearing date and her right to be represented by counsel. That summons included this message:

> **You are further notified that you are entitled to be represented by legal counsel. If you are unable to afford to employ counsel, the Court will, upon approving your application, appoint counsel to represent you at public expense. You may apply to have counsel appointed by appearing in person at the Clerk of Court Office, Muscatine County Courthouse, Muscatine, Iowa, and filling out an affidavit of your financial situation, You should do this immediately.**

The sheriff served the summons on Tamika on March 22. But she did not filed her request for counsel until April 24, more than one month later.

On appeal, Tamika argues the denial of her motion to continue violated her right to due process. No question, "[w]e have procedural safeguards in our CINA and [termination of parental rights] statutes to adequately accord fundamental fairness to parents." *In re M.D.*, 921 N.W.2d 229, 243 (Iowa 2018) (citing section 232.113 as one such safeguard). But Tamika did not raise a due process claim

before the juvenile court. Thus, we consider only whether the court abused its discretion in denying the motion to continue. *See id* at 234.

Tamika's case is unlike *In re E.J.C.*, where the juvenile court denied a parent's eleventh-hour request for court-appointed counsel. 731 N.W.2d 402, 404 (Iowa Ct. App. 2007). There, we noted "section 232.113(1) does not set forth any time frame in which a request for court appointed counsel must be made." We acknowledged the parent "should have been more attentive to her legal needs and applied for counsel earlier," but we found her delay should not deprive her of counsel absent a statutory time limitation. *Id.*

By contrast, Tamika was not denied the right to counsel. Rather, she had the same well-prepared counsel who represented her in the CINA proceedings. But we are concerned by the short turnaround afforded counsel in these termination proceedings. We are less ready than the juvenile court to blame the mother for her belated application. Parents or any lay persons could understandably read the language in the summons highlighted above and not realize they would need to reapply for counsel when they have already been represented in the CINA case. *See In re J.B.*, No. 18-1807, 2018 WL 6706266, at *2 (Iowa Ct. App. Dec. 19, 2018) (finding juvenile court abused its discretion in "plowing forward in the termination proceeding without appointing counsel, at least, to assist the parents on a temporary basis in explaining the need to again apply for court-appointed counsel"). We would strongly recommend such notices be revised to expressly notify parents that they must submit a new request for court-appointed counsel in the termination proceeding even if the court appointed counsel in the CINA case. We also believe it would be best practice to notify the

attorneys appointed in CINA cases when a termination petition has been filed so counsel can advise their clients of the need to apply for court-appointed counsel in that new proceeding. Even with those suggestions, under the instant circumstances, we cannot find the juvenile court abused its discretion in denying the motion to continue. *See In re C.W.,* 554 N.W.2d 279, 281 (Iowa Ct. App. 1996) ("Denial of a motion to continue must be unreasonable under the circumstances before we will reverse.").

### B.     Statutory Grounds

The juvenile court terminated Tamika's parental rights to Z.R. under Iowa Code section 232.116(1), paragraphs (e), (h), and (*l*). The court terminated her rights to H.B. under paragraphs (e) and (*l*). Tamika contests all grounds on appeal. "When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We choose to address paragraph (h) for Z.R. and paragraph (e) for H.B.

Termination under section 232.116(1)(h) requires showing:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (3) The child has been removed from the physical custody of a child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Tamika concentrates on the last point, asserting Z.R. could have been placed in her custody at the time of the hearing. Tamika argues the State failed to

show harm would befall the two-year-old girl if returned to her care. She questions the record proof of her continued methamphetamine use.

Contrary to her argument, the record reveals Tamika has not addressed her substance abuse. The juvenile court did not believe her claim she was "clean and sober" finding her failure to comply with random drug tests was "a strong indicator of continued drug use." Our courts have recognized the hazards of leaving young children in the care of methamphetamine users. *See State v. Petithory*, 702 N.W.2d 854, 859 (Iowa 2005). The fact Tamika has not successfully sought treatment heightens our concern. *See A.B.*, 815 N.W.2d at 776 (explaining "an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children"). The record contains clear and convincing evidence it is not safe to place Z.R. in Tamika's care at the present time.

Termination under section 232.116(1)(e) requires showing:

> (1) The child has been adjudicated a [CINA] pursuant to section 232.96.
> (2) The child has been removed from the physical custody of the child's parent for a period of at least six consecutive months.
> (3) There is clear and convincing evidence that the parents have not maintained significant and meaningful contact with the child during the previous six consecutive months and have made no reasonable efforts to resume care of the child despite being given the opportunity to do so.

Tamika focuses on the third point, asserting she has maintained "significant and meaningful contact" with H.B. That phrase "includes but is not limited to the affirmative assumption by the parents of the duties encompassed by the role of being a parent." Iowa Code § 232.116(1)(e)(3). On top of financial obligations, this affirmative duty "requires continued interest in the child, a genuine effort to complete the responsibilities prescribed in the case permanency plan, a genuine

effort to maintain communication with the child, and requires that the parents establish and maintain a place of importance in the child's life." *Id.*

Tamika argues "it should not be held against [her] that visitation was not allowed with H.B." That argument tells only part of the story. The court suspended visitation for H.B.'s therapeutic benefit. In its January 2019 order, the court set clear expectations for Tamika to meet before interactions could resume. She did not try to meet those expectations. We also agree with the juvenile court's conclusion that Tamika did not make affirmative efforts to comply with the mandates of the case permanency plan so she could assume the role of parent to H.B. The record contains clear and convincing evidence that termination of her rights to H.B. is proper under section 232.116(1)(e).

## C. Parent-Child Bond

Tamika contends termination of her parental rights would be detrimental to H.B. and Z.R. because of the closeness of the parent-child relationship. *See* Iowa Code § 232.116(3)(c). But she falls short of showing that detriment. *See In re A.S.*, 906 N.W.2d 467, 476–77 (Iowa 2018) (holding parent resisting termination has burden to prove permissive factors under section 232.116(3)). When the DHS offered visitation, Tamika's attendance was lackluster. Her inconsistency triggered aggressive behaviors in H.B. And both children are benefitting from the stability offered by their foster home. On these facts, section 232.116(3)(c) does not weigh against termination.

## D. Additional Time

Tamika contends that given a little more time she could resolve the situation that led to the children's removal. To grant an extension of six months under Iowa

Code section 232.104, the court must determine the need for removal will dissipate at the end of that time. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005). We cannot make such a determination here. Tamika has a long history of substance abuse and refuses to address it head on. The record gives us no reason to believe her addiction and instability will be resolved in six months. The extension is not warranted.

**AFFIRMED.**